# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| LOIS PERONA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )     CAUSE NO. 1:10-CV-00322 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Lois Perona appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED for additional proceedings in accordance with this opinion.

### I. FACTUAL AND PROCEDURAL HISTORY[2]

*A. Perona's Background*

As of the date of the ALJ's decision, Perona was fifty-two years old, had obtained a GED, and possessed past relevant work experience as a bank teller and waitress. (Tr. 109, 135-36, 139, 174-75, 183.) Perona alleges that she became disabled due to peripheral vascular disease; ischemia of the right leg; status post-femoral, embolectomy; trifurcation vessel disease

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

[2] The administrative record in this case is voluminous (539 pages). Therefore, in the interest of brevity, this opinion recounts only the portions of the record necessary to the decision.

of anterior tibial artery of the right leg, status post surgery on her right leg for peripheral vascular disease, aortogram; diabetes mellitus; depression; and use of pain medications. (Opening Br. 2.)

*B. Perona's Application for DIB*

Perona applied for DIB on August 30, 2006, alleging that she became disabled as of April 17, 2006. (Tr. 109-11.) The Commissioner denied her application initially and upon reconsideration, and Perona requested a hearing. (Tr. 56-59, 63-65, 69-72.) On March 4, 2009, Administrative Law Judge ("ALJ") Yvonne Stam conducted a hearing at which Perona, who was represented by counsel, and Amy Kutschbach, a vocational expert (the "VE"), testified. (Tr. 29-53.)

On August 24, 2009, the ALJ rendered an unfavorable decision to Perona, concluding that she was not disabled despite the limitations caused by her impairments because she could perform a significant number of jobs in the economy. (Tr. 14-28.) The Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-10.)

Perona filed a complaint with this Court on September 10, 2010, seeking relief from the Commissioner's final decision. (Docket # 1.) In this appeal, Perona alleges that the ALJ's step-five finding is not supported by substantial evidence and that the ALJ improperly discounted the credibility of her symptom testimony.[3] (Opening Br. of Pl. in Social Security Appeal ("Opening Br.") 15-21.)

---

[3] As will be explained *infra*, because a remand is warranted on the ALJ's step-five finding, the Court does not ultimately need to reach Perona's credibility argument. Accordingly, the relevant portion of the VE's testimony and correspondence is set forth in lieu of a summary of the medical evidence of record.

*C. Summary of the VE's Testimony at the Hearing*

At the March 4, 2009, hearing, the VE testified that a hypothetical individual with Perona's age, education, experience, and RFC could perform the light work jobs of canteen worker (100 jobs in the region), automobile self-service station attendant (between 100 and 150 jobs), and cashier checker (4,000 jobs). (Tr. 47-48.) In doing so, the VE identified a conflict with the definition of these jobs under the Dictionary of Occupational Titles, but then further explained that studies have shown that the jobs could indeed be performed from the seated or standing positions without any effect on the work. (Tr. 47-48.)

After the ALJ completed her questioning of the VE, Perona's attorney examined the VE as follows:

> Atty:  With respect to the positions that you cited, you referenced a study that . . . showed how that position could be performed.
>
> VE:  Uh-huh.
>
> Atty:  Do you have that study available?
>
> VE:  I can make it available, yes.
>
> Atty:  Okay. What is the title of that . . . study?
>
> VE:  Employer Validation of Jobs Performed with a Sit/Stand Option.
>
> . . . .
>
> Atty:  And . . . the numbers of jobs available that you gave, how did you arrive at those?
>
> VE:  I used a combination of approaches on determining numbers. I look at the SOC, Bureau of Labor statistics information, I look at the population of the city, the major industries of the metropolitan statistical area. I also use information from the census, with specifics to the SVPs and the physical demands.
>
> Atty:  Okay. And then how do you, . . . is there a methodology that you've used for [it]?

> VE: There is not a specific equation.
>
> Atty: Is there any . . . method that's acceptable that's been studied or published within the field for determining these number[s] of jobs?
>
> VE: Not . . . that I'm aware of. Specific for it to be uniform from one individual, one expert to another expert.
>
> Atty: Do you have the information or the calculations as to how you arrived at the numbers of jobs for these specific jobs you gave?
>
> VE: I don't have anything in writing. I have all those sources that I used.
>
> Atty: But do you have the . . . specifics as to the sources what . . . you've used to do the calculation?
>
> VE: Yes. I have a list of specific sources that I use.
> . . .
>
> Atty: I guess what I'm asking is the information from the sources[.] [D]o you have the specific data that you used with respect to, for example, the canteen operator, the cashier checker, and then auto self-service station?
>
> VE: Yes.
>
> Atty: So could you make those, the numbers, the specific numbers available as to how you calculated the [100], the 150, and the 4,000 jobs?
>
> VE: Yes.
>
> Atty: Okay. I would just ask, Judge, that those, that information be produced.
>
> ALJ: All right. Ms. [Kutschbach], how long will it take you to submit that?
>
> VE: Well did you give the attorney 20 days? Can I . . . have 20 days?
>
> ALJ: Yeah. Not a problem. . . . .

(Tr. 49-52.)

### D. Relevant Correspondence After the Hearing

On June 3, 2009, Perona's attorney sent a letter to the ALJ, stating in relevant part:

4

> I am writing in follow-up to a hearing held before you on March 4, 2009. At the hearing you kept the record open for . . . the vocational expert, Amy Kutschbach, to provide documentation. As you may recall, I had requested that the vocational expert produce documentation and information regarding her methodology, calculations, and sources relied upon to arrive at the number of jobs she cited in response to a hypothetical posed at the hearing. That information is necessary to determine the reliability of the testimony and to allow me to properly cross-examine the vocational expert. To date, I have not received that information. . . . To the extent the information is not provided, please note my objection to the testimony as unreliable and unsubstantiated.

(Tr. 187.) Later that day, the ALJ forwarded to Perona's attorney a copy of two documents prepared by the VE: (1) a Vocational Past Relevant Summary, which simply listed Perona's past work; and (2) a Vocational Addendum Report, dated March 19, 2009, which stated in relevant part:

> The initial step to studying a case is to determine the claimant's residential location and what statistical area will be used for the study – whether an Economic Development Region (EDR), a Metropolitan Statistical Area (MSA) or a Combined Statistical Area (CSA). Contiguous counties may also be incorporated depending on the geographic locale.
>
> Next, consideration would be given to the Standard Occupational Classification (SOC) – or the major groups of occupations combined with the Guide for Occupational Exploration (GOE) for transferable skill information. Labor Market Information (LMI) and as well as statistics from the Indiana Department of Workforce Development are also considered at this stage to determine the types of positions within the SOC group that may be available on a regional level.
>
> Finally, the Bureau of Labor Statistics (BLS) and Census Bureau (CB) employment statistics for the local region are researched combined [sic] with information available in industrial directories, researching local industry, major occupations, and economic base specific to the area.
>
> Please contact me if you require additional information.

(Tr. 185.) The VE's Addendum Report did not enclose any of the underlying data or sources, and thus no enclosures were provided to Perona's attorney.

5

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## III. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. § 404.1520; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

On August 24, 2009, the ALJ rendered her decision. (Tr. 14-28.) She found at step one of the five-step analysis that Perona had not engaged in substantial gainful activity after her alleged onset date. (Tr. 16.) At step two, she concluded that Perona had the following severe impairments: peripheral vascular disease in the lower extremities, right leg ischemia, and right

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

7

leg pain. (Tr. 16.) The ALJ then at step three determined that Perona's impairment or combination of impairments was not severe enough to meet a listing. (Tr. 18.)

Before proceeding to step four, the ALJ assigned Perona the following RFC and found that her subjective complaints were "not entirely credible to the extent they are inconsistent" with the following RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . with the following limitations: the claimant can occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and walk in combination for a total of at least 2 hours in an 8-hour workday; sit for a total [of] about 6 hours in an 8-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and she must be permitted to change positions from sitting to standing at will.

(Tr. 19.) Based on this RFC and the VE's testimony, the ALJ concluded at step four that Perona was unable to perform her past relevant work as a bank teller or waitress. (Tr. 26.) The ALJ concluded at step five, however, that she could perform a significant number of other jobs within the economy, including canteen operator, automobile self-service attendant, and cashier checker. (Tr. 27.) Therefore, Perona's claim for DIB was denied. (Tr. 28.)

### C. *The ALJ's Step-Five Finding Is Not Supported by Substantial Evidence*

Perona's first argument on appeal is that the ALJ's determination at step five is not supported by substantial evidence because the VE's testimony upon which the ALJ relied lacked an adequate foundation. For the reasons stated herein, Perona's argument has merit.

As explained *supra*, a plaintiff seeking DIB bears the burden of proof at steps one through four of the ALJ's sequential five-part inquiry; the burden then shifts to the Commissioner at step five. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At this final step, the Commissioner must establish that the plaintiff's RFC allows her to engage

8

in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. One way the Commissioner may carry this burden is through the use of vocational expert testimony, provided that such testimony is reliable. *See, e.g., Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992).

The Seventh Circuit Court of Appeals has "recognized that the standards by which an expert's reliability is measured may be less stringent at an administrative hearing than under the Federal Rules of Evidence." *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). Yet, "because an ALJ's findings must be supported by substantial evidence, an ALJ may depend upon expert testimony only if the testimony is reliable." *Id.*; *Donahue*, 279 F.3d at 446 ("Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth."); *see also Britton v. Astrue*, 521 F.3d 799, 803-04 (7th Cir. 2008).

"If the basis of the vocational expert's conclusions *is* questioned at the hearing . . . then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the purported expert's conclusions are reliable." *Donahue*, 279 F.3d at 446. "A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie*, 368 F.3d at 911 (quoting *Donahue*, 279 F.3d at 446). "[T[he data underlying a VE's testimony must be available on demand to facilitate cross-examination and testing of the VE's reliability." *Britton*, 521 F.3d at 803.

Yet here, after Perona questioned the VE's foundation at the hearing, the ALJ failed to inquire into the reliability of the VE's methodology, sources, and conclusions, as she was

9

required to do under *Donahue* and *McKinnie*. *See McKinnie*, 368 F.3d at 911; *Donahue*, 279 F.3d at 446. "[T]he case law in this Circuit is clear that once the basis of the VE's conclusions is questioned at the hearing, the ALJ's duty to make an inquiry into the reliability of those conclusions is triggered." *Rasnake v. Astrue*, No. 1:08-CV-134-PRC, 2009 WL 1085969, at *20 (N.D. Ind. Apr. 22, 2009) (citing *McKinnie*, 368 F.3d at 991; *Holtz v. Astrue*, No. 07-C-0314-C, 2008 WL 4704187, at *1 (W.D. Wis. Apr. 14, 2008)); *see also Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008) ("[A] disability adjudication is a hybrid between the adversarial and inquisitorial models, and if the basis of the VE's testimony is questioned at the hearing, then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable[.]" (internal quotation marks and citations omitted)).

More specifically, Seventh Circuit case law has instructed that if the basis of a VE's conclusion is challenged at the hearing, "then the ALJ should make an inquiry (*similar though not necessarily identical to that of Rule 702*) to find out whether the purported expert's conclusions are reliable." *Donahue*, 279 F.3d at 446 (emphasis added); *see also McKinnie*, 368 F.3d at 911. Rule 702 states that a witness qualified as an expert by his knowledge, skill, experience, training or education, may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Civ. P. 702. Here, rather than producing facts, data, and reliable methodology, the VE seemed to indicate during her testimony that she essentially relied upon her own experience in reaching her bottom-line conclusions (Tr. 50-51 ("There is not a specific equation. . . . I don't have anything in writing. I have all those sources that I used.")), which seemingly falls short of the standards

10

articulated by the Seventh Circuit Court of Appeals in *McKinnie*, 368 F.3d at 910-11, and *Britton*, 521 F.3d at 803-04.

Moreover, the data underlying the VE's bottom line was *not* "available on demand" to Perona. At the hearing, Perona's attorney specifically requested the VE's underlying data, asking if the VE could "make . . . the specific numbers available as to how [she] calculated the [100], the 150, and the 4,000 jobs[.]" (Tr. 51.) The VE, however, never provided a copy of her underlying data to Perona, instead she forwarded a written summary (set forth in relevant part *supra*) that merely lists the sources that she "would" consider when studying a case. (Tr. 185.) *Cf. Britton*, 521 F.3d at 804 (finding that the data underlying the VE's testimony was "available on demand" where the VE brought a substantial amount of materials with her to the hearing and was willing to provide those portions on which she relied to plaintiff's counsel). Morever, although several of the sources listed in the VE's summary are indeed "government sources of which the ALJ was required to take administrative notice", the VE also identified several non-governmental sources, such as "industrial directories", "local industry", "major occupations", and "economic base specific to the area", which detract from the reliability of the VE's testimony. *Liskowitz v. Astrue*, 559 F.3d 736, 743-44 (7th Cir. 2009).

In sum, "[a] finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Overman v. Astrue*, 546 F.3d 456, (7th Cir. 2008) (quoting *Britton*, 521 F.3d at 803). Therefore, this case will be remanded to the ALJ to conduct a new step-five analysis in which Perona is provided with the actual data and

11

reasoning underlying the VE's testimony.[5]

## IV.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED for further proceedings in accordance with this Opinion. The Clerk is directed to enter a judgment in favor of Perona and against the Commissioner.

SO ORDERED.

Enter for this 11th day of July, 2011.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[5] Because a remand is warranted on Perona's step-five argument, the Court does not need to reach her remaining argument concerning the ALJ's finding that her subjective symptom testimony was only "partially credible". (Tr. 26.)